## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **LEVI YODER, JONAS ZOOK, SAM ZOOK, JOHN L. HERSHBERGER, MENNO S. HERSHBERGER, URIE HERSHBERGER, MENNO L. GLICK, ANDY A. MILLER, DANNIE L. SWARTZENTRUBER, MOSIE SWARTZENTRUBER, PETER D. SWARTZENTRUBER, BISHOP HARVEY MILLER, and BISHOP MOSE MILLER,** | ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | |
| **TOWN OF MORRISTOWN, LANETTA KAY DAVIS, in her official capacity; FRANK L. PUTMAN, in his official capacity; HOWARD WARREN, in his official capacity; DAVID STOUT III, in his official capacity; MARK BLANCHARD, in his official capacity; CHRISTOPHER COFFIN, in his official capacity; and GARY TURNER, in his official capacity,** | ) ) ) ) ) ) ) ) ) ) ) | **CASE NO. _____**  **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

## COMPLAINT

1.      Plaintiffs Levi Yoder, Jonas Zook, Sam Zook, John L. Hershberger, Menno S. Hershberger, Urie Hershberger, Menno L. Glick, Andy A. Miller, Dannie L. Swartzentruber, Mosie Swartzentruber, Peter D. Swartzentruber, Bishop Harvey Miller and Bishop Mose Miller (collectively, "Plaintiffs"), for their complaint against Defendants the Town of Morristown, New York, Lanetta Kay Davis, Frank L. Putman, Howard Warren, David Stout III, Gary Turner, Mark Blanchard, and Christopher Coffin (collectively, "Defendants"), allege as follows:

## NATURE OF THE CASE

2.      This is an action to enforce Plaintiffs' rights under the First and Fourteenth Amendments of the United States Constitution, Article I, Sections 3 and 11, of the New York State Constitution, the Fair Housing Act; 42 U.S.C. § 3601 *et seq.*, and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.*

3.      Plaintiffs are adherents of the Swartzentruber Amish faith who reside within the Town of Morristown, New York ("Morristown" or the "Town").  The Swartzentruber Amish have lived in Morristown for many years.  They lived in peaceful co-existence with non-Amish Morristown residents until Defendant Lanetta Kay Davis was appointed as Morristown's new Code Enforcement Officer.  Not long after she was appointed, Defendants enacted a new local law, Local Law # 4 of 2006 ("Local Law # 4"), that incorporates portions of the New York State Building and Fire Code (the "Building Code").  As set forth below, Davis (and the other Defendants) immediately began to enforce Local Law # 4—which purports to regulate, among other things, construction of or relating to residential housing—against the Swartzentruber Amish.  Defendants enforced, and continue to enforce, Local Law # 4 and the Building Code in a

manner that discriminates against Plaintiffs and makes it impossible for them to live out their faith in Morristown.

4.      Since 2006, each of the Plaintiffs (with the exceptions of Bishops Harvey Miller and Mose Miller) has received a citation for building or moving a structure without a permit; acts which are, according to Local Law # 4, Class A misdemeanors.   In fact, every landowning Swartzentruber Amish resident of Morristown who has attempted to build on or move a structure onto his property has received a citation since the appointment of Davis and the enactment of Local Law # 4.   Some of Plaintiffs are currently being prosecuted in connection with those citations in Morristown Town Court.

5.      At one time or another, each landowning Plaintiff applied for or requested a building permit, but all permit applications were denied by Davis.  The ostensible basis for the denials was the Plaintiffs' "failure" to submit construction documents prepared and approved by an architect or to otherwise agree to certain facial requirements of Local Law # 4.

6.      Upon information and belief, Defendants were and are aware that Plaintiffs were and are unable to comply with a number of these requirements as a result of their religious beliefs, but Defendants denied the building permit applications anyway.

7.      Defendants did so notwithstanding that they have no reason to believe the homes built by the Swartzentruber Amish are less safe than non-Amish homes or that enforcing such requirements against the Swartzentruber Amish residents of Morristown will materially affect the safety and welfare of Morristown's citizens.

8.      In fact, the Swartzentruber Amish homes, which are built in accordance with rigorous, traditional standards that have been used by the Swartzentruber Amish for decades, are of extremely high quality and among the most structurally sound buildings in the region.

9.      Upon information and belief, Defendants have never undertaken any study or made any other factual determination that Swartzentruber Amish homes are unsafe or any less safe than any other homes regulated by Defendants.

10.     Before 2006, the Swartzentruber Amish in Morristown were granted building permits and permitted to build their homes according to their traditional standards and customs without interference from any Morristown official.   Even though the high quality of Swartzentruber Amish home construction has not changed since Davis was appointed to her position and Local Law # 4 was enacted, since then no Swartzentruber Amish resident of Morristown has been granted a building permit and any Swartzentruber Amish resident who has tried to build, alter, or move a structure on his property has been issued a citation.

11.     Defendants' enforcement of Local Law # 4 and the Building Code violates Plaintiffs' rights under the United States and New York State Constitutions.  Defendants' actions substantially burden the religious beliefs of Plaintiffs without a compelling government interest. Further, enforcement of Local Law # 4 in the manner undertaken by Defendants does not constitute the least restrictive means by which to further any government interest Defendants may claim to have.

12.     Moreover, upon information and belief, Defendants are selectively and discriminatorily enforcing Local Law # 4 and the Building Code against Plaintiffs because of Plaintiffs' religious beliefs.  This unequal enforcement violates Plaintiffs' rights under the First

and Fourteenth Amendments to the United States Constitutions and Article I of the New York Constitution.

13.     Additionally, the manner in which Local Law # 4 and the Building Code is being enforced threatens to deprive Plaintiffs of housing in the Town of Morristown altogether, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a).  Defendants have given Plaintiffs the Hobson's choice of violating their sincerely held religious beliefs or facing substantial monetary penalties and potentially serving as much as six months in prison.

14.     Finally, because Defendants' enforcement of Local Law # 4 and the Building Code involves individualized government assessments in applying a land use regulation in a manner that imposes a substantial burden on Plaintiffs' religious exercise, without a compelling government interest and in an manner that does not employ the least restrictive means of furthering any compelling governmental interest, Defendants are also violating 42 U.S.C. § 2000cc(a)(1), the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

15.     If Defendants' current course of action is not enjoined or otherwise stopped, Plaintiffs and all other Swartzentruber Amish living in Morristown will be forced to move from Morristown because they will not be able to live their lives in accordance with their religious beliefs.  Plaintiffs thus respectfully seek this Court's intervention to protect their constitutional and civil right to practice their religion the way they had practiced it for many years in Morristown, before the arrival of Defendant Davis.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States.  This Court has supplemental

4

jurisdiction over Plaintiffs' claims arising under the New York State Constitution pursuant to 28 U.S.C. § 1367.

17.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims have occurred in this judicial district.

## PARTIES

18.     Plaintiff Levi Yoder is a practitioner of the Swartzentruber Amish faith residing in Morristown.  Plaintiff Levi Yoder applied for a building permit from Morristown but Defendants refused to issue the permit.  On or about September 26, 2007, Plaintiff Levi Yoder received a citation from Davis for building without a permit in violation of Local Law # 4, a Class A misdemeanor. An action to enforce the citation was brought and is currently pending in Morristown Town Court.  Plaintiff Levi Yoder reasonably expects that Morristown will continue to refuse to issue a building permit to him in the future.

19.     Plaintiff Jonas Zook is a practitioner of the Swartzentruber Amish faith residing in Morristown.  Plaintiff Jonas Zook applied for a building permit from Morristown but Defendants refused to issue the permit.  On or about September 26, 2007, Plaintiff Jonas Zook received a citation from Davis for building without a permit in violation of Local Law # 4, a Class A misdemeanor. An action to enforce the citation was brought and is currently pending in Morristown Town Court.  Plaintiff Jonas Zook reasonably expects that Morristown will continue to refuse to issue a building permit to him in the future.

20.     Plaintiff Sam Zook is a practitioner of the Swartzentruber Amish faith residing in Morristown. Plaintiff Sam Zook applied for a building permit from Morristown but Defendants refused to issue the permit.  On or about March 15, 2007, Plaintiff Sam Zook received a citation

from Davis for building without a permit in violation of Local Law # 4, a Class A misdemeanor. An action to enforce the citation was brought and is currently pending in Morristown Town Court.  Plaintiff Sam Zook reasonably expects that Morristown will continue to refuse to issue a building permit to him in the future.

21.     Plaintiff John L. Hershberger is a practitioner of the Swartzentruber Amish faith residing in Morristown. Plaintiff John L. Hershberger applied for a building permit from Morristown but Defendants refused to issue the permit.  On or about May 10, 2007, Plaintiff John L. Hershberger received a citation from Davis for building without a permit in violation of Local Law # 4, a Class A misdemeanor. An action to enforce the citation was brought and is currently pending in Morristown Town Court.  Plaintiff John L. Hershberger reasonably expects that Morristown will continue to refuse to issue a building permit to him in the future.

22.     Plaintiff Menno S. Hershberger is a practitioner of the Swartzentruber Amish faith residing in Morristown. Plaintiff Menno S. Hershberger applied for a building permit from Morristown but Defendants refused to issue the permit.  On or about May 10, 2007, Plaintiff Menno S. Hershberger received a citation from Davis for moving a structure without a permit in violation of Local Law # 4, a Class A misdemeanor. An action to enforce the citation was brought and is currently pending in Morristown Town Court.  Plaintiff Menno S. Hershberger reasonably expects that Morristown will continue to refuse to issue a building permit to him in the future.

23.     Plaintiff Urie Hershberger is a practitioner of the Swartzentruber Amish faith residing in Morristown. Plaintiff Urie Hershberger applied for a building permit from Morristown but Defendants refused to issue the permit.  On or about May 10, 2007, Plaintiff

Urie Hershberger received a citation from Davis for building without a permit in violation of Local Law # 4, a Class A misdemeanor.  An action to enforce the citation was brought and is currently pending in Morristown Town Court.  Plaintiff Urie Hershberger reasonably expects that Morristown will continue to refuse to issue a building permit to him in the future.

24.   Plaintiff Menno L. Glick is a practitioner of the Swartzentruber Amish faith residing in Morristown.  Plaintiff Menno L. Glick applied for a building permit from Morristown but Defendants refused to issue the permit.  On or about May 10, 2007, Plaintiff Menno L. Glick received a citation from Davis for building without a permit in violation of Local Law # 4, a Class A misdemeanor.  An action to enforce the citation was brought and is currently pending in Morristown Town Court.  Plaintiff Menno L. Glick reasonably expects that Morristown will continue to refuse to issue a building permit to him in the future.

25.   Plaintiff Andy A. Miller is a practitioner of the Swartzentruber Amish faith residing in Morristown.  Plaintiff Andy A. Miller applied for a building permit from Morristown but Defendants refused to issue the permit.  On or about July 20, 2006, Plaintiff Andy A. Miller received a citation for building without a permit.  An action to enforce the citation was brought and is currently pending in Morristown Town Court.  Plaintiff Andy A. Miller reasonably expects that Morristown will continue to refuse to issue a building permit to him in the future.

26.   Plaintiff Dannie L. Swartzentruber is a practitioner of the Swartzentruber Amish faith residing in Morristown.  Plaintiff Dannie L. Swartzentruber applied for a building permit from Morristown but Defendants refused to issue the permit.  On or about January 25, 2008, Plaintiff Dannie L. Swartzentruber received a citation from Davis for building without a permit in violation of Local Law # 4, a Class A misdemeanor.  An action to enforce the citation was

brought and is currently pending in Morristown Town Court.  Plaintiff Dannie L. Swartzentruber reasonably expects that Morristown will continue to refuse to issue a building permit to him in the future.

27.     Plaintiff Mosie Swartzentruber is a practitioner of the Swartzentruber Amish faith residing in Morristown. Plaintiff Mosie Swartzentruber applied for a building permit from Morristown but Defendants refused to issue the permit.  On or about January 25, 2008, Plaintiff Mosie Swartzentruber received a citation from Davis for building without a permit in violation of Local Law # 4, a Class A misdemeanor. An action to enforce the citation was brought and is currently pending in Morristown Town Court.   Plaintiff Mosie Swartzentruber reasonably expects that Morristown will continue to refuse to issue a building permit to him in the future.

28.     Plaintiff Peter D. Swartzentruber is a practitioner of the Swartzentruber Amish faith residing in Morristown.  Plaintiff Peter D. Swartzentruber applied for a building permit from Morristown but Defendants refused to issue the permit.  On or about September 12, 2008, Plaintiff Peter D. Swartzentruber received a citation from Davis for building without a permit in violation of Local Law # 4, a Class A misdemeanor.  An action to enforce the citation was brought and is currently pending in Morristown Town Court.  Plaintiff Peter D. Swartzentruber reasonably expects that Morristown will continue to refuse to issue a building permit to him in the future.

29.     Plaintiff Bishop Harvey Miller is a Bishop of the Swartzentruber Amish community in Morristown.  Bishop Harvey Miller is responsible for ministering to and overseeing the Swartzentruber Amish living in Morristown.  Among his other religious duties, Bishop Harvey Miller is responsible for ensuring that members of the Swartzentruber Amish

community in Morristown follow the collection of religious precepts known as the *Ordnung*. Bishop Harvey Miller also has the duty of providing authoritative interpretations of the *Ordnung* for the Swartzentruber Amish community.  Bishop Harvey Miller's ministry will be severely impaired if the members of his district, or church, are forced to leave Morristown altogether or are put in prison.

30.     Plaintiff Bishop Mose Miller is a Bishop of the Swartzentruber Amish community in Morristown.  Bishop Mose Miller is responsible for ministering to and overseeing the Swartzentruber Amish living in Morristown.  Among his other religious duties, Bishop Mose Miller is responsible for ensuring that members of the Swartzentruber Amish community in Morristown follow the collection of religious precepts known as the *Ordnung*.  Bishop Mose Miller also has the duty of providing authoritative interpretations of the *Ordnung* for the Swartzentruber Amish community.  Bishop Mose Miller's ministry will be severely impaired if the members of his district, or church, are forced to leave Morristown altogether or are put in prison.

31.     Defendant Morristown is a municipality organized under the laws of the State of New York (the "State"), created and existing by virtue of the Constitution and laws of the State, and is empowered by the State to act through its governing body, its officials, employees and official bodies.  Under Town Law § 130, the Town is empowered by the State to regulate the construction of buildings within the Town's borders.  The Town is an agency of the State.

32.     Defendant Davis is Morristown's Code Enforcement Officer.

33.     Defendant Frank L. Putman is the Town Supervisor for the Town and a member of the Town Council.

9

34.     Defendant Howard Warren is the Deputy Supervisor for the Town and a member of the Town Council of Morristown.

35.     Defendant David Stout III is a member of the Town Council of Morristown.

36.     Defendant Mark Blanchard is a member of the Town Council of Morristown.

37.     Defendant Christopher Coffin is a member of the Town Council of Morristown.

38.     Defendant Gary Turner is a member of the Town Council of Morristown.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**The Religious Beliefs of the Swartzentruber Amish**

39.     The religious group known as the Amish split off from the larger group of Swiss Anabaptists in 1693 and are named after their leader Jakob Ammann.  The Amish immigrated to this country in eighteenth and nineteenth centuries in an effort to escape religious persecution.

40.     Within the Amish community in the United States, there is a large subset known as the Old Order Amish.  The Old Order Amish are those Amish groups which adhere to a traditional way of life and eschew modern conveniences and technology.  Currently, the Old Order Amish are a community of approximately 220,000 adherents, spread across over twenty states, with roughly 5,000 adherents residing in the State of New York.

41.     During their history both in Europe and in the United States, the Old Order Amish have frequently suffered state and private persecution for their religious beliefs and practices.

42.     Plaintiffs are members of the Swartzentruber Amish, a subset of the Old Order Amish.  The Swartzentruber Amish first formed a distinct community in 1917, and are known as one of the most traditional Old Order Amish groups.

43.     The main religious principles of the Old Order Amish include 1) living a simple life, free of waste or extravagance, 2) maintaining separation from the world and worldly customs, and 3) maintaining faith in God, rather than man, to protect and provide for the Amish community.  The Amish take seriously the Bible's admonition to "be not conformed to this world" (Romans 12:2), and strive to live in a unique community untainted by materialistic influences.

44.     Many of the particular religious rules of the Swartzentruber Amish are designed to further these over-arching tenets of their faith.  Some of these rules include:

- communicating in a dialect of German known as *Deitsch* (commonly known as Pennsylvania Dutch)

- pacifism

- not using electricity in their homes

- driving horse drawn carriages rather than automobiles or other gasoline-powered vehicles

- wearing simple and modest clothing that does not include zippers or other modern innovations

- building houses to be simple, basic and free of modern conveniences or any ornamentation.

45.   Like other Old Order Amish groups, the religious laws of the Swartzentruber Amish are collected in the *"Ordnung"* (Order), which is passed down from generation to generation.  The Amish believe it is important to maintain the same *Ordnung* followed by their parents and grandparents, with minimal addition or alteration to account for changing circumstances.  The *Ordnung* covers almost every facet of Swartzentruber Amish daily life, including rules for the construction of houses, barns, and other structures.

46.   The *Ordnung* rules pertaining to housing and construction not only ensure that Swartzentruber Amish religious beliefs are followed, but also to ensure that Swartzentruber Amish structures will be built safely, according to the methods that have been used and passed down through generations.

47.   In fact, the Amish are known for their high standards in the construction of buildings and furniture; non-Amish frequently pay handsomely for Amish-built furniture and homes due to the old-world craftsmanship and careful attention to detail.

48.   It is the responsibility of the Bishop of a given Swartzentruber Amish community to ensure that the *Ordnung* is being followed by the members of the community.[1]  If a member of the community does not follow the *Ordnung*, he or she will be given a chance to confess and repent.  Failure to comply results in exclusion from the community until he or she confesses and repents.

---

[1]   Like other Old Order Amish, the Swartzentruber Amish are divided into church "districts."  These districts are divided by geographic locations and size of membership.

49.     If a church district changes its *Ordnung* in a way that is materially different from the traditional *Ordnung*, that community will be unable to participate in fellowship with other Swartzentruber Amish communities. In effect, that church district and all of its members will itself be excommunicated from the rest of the Swartzentruber Amish districts.

50.     If a church district is not able to engage in fellowship with other church districts, the young people of that church district will not be able to marry Swartzentruber Amish from other districts.

51.     If a Swartzentruber Amish district allowed homes to be built with smoke detectors installed or according to architect-certified plans, for example, it would be cut off from other Swartzentruber Amish communities.

52.     The Swartzentruber Amish do not build church buildings.  Instead they meet in homes for communal worship.

53.     A ban on the construction of traditional Swartzentruber Amish homes in a jurisdiction is therefore equivalent to a ban on Swartzentruber Amish worship in that jurisdiction.

54.     The Swartzentruber Amish moved to St. Lawrence County, New York in the early 1970s, and have lived peacefully with their neighbors in the North Country for over thirty years.

55.     The Swartzentruber Amish in the region have a successful history of living in accordance with both the requirements of the *Ordnung* and applicable law.  Both the construction of Amish homes and Amish home-based businesses contribute to the financial well-being of the community.

**The Appointment of Davis as Code Enforcement Officer and Enactment of Local Law # 4**

56.     Before 2006, the Swartzentruber Amish in Morristown built their houses according to their own traditional specifications, without complaint or interruption by the local authorities.

57.     Swartzentruber Amish in Morristown routinely applied for and were granted building permits.  Any issues that arose between the Swartzentruber Amish and local authorities were resolved through negotiation and compromise.

58.     In either late 2005 or early 2006, Defendant Putnam appointed, and the Morristown Town Board approved, Defendant Davis as the Town's Code Enforcement Officer. Davis had previously been the Code Enforcement Officer for the Town of Hammond, which is also located in St. Lawrence County.

59.     While she was Code Enforcement Officer for Hammond, Davis initiated code enforcement proceedings against two Swartzentruber Amish residents of that town.   Upon information and belief, these were the first code enforcement proceedings undertaken against Amish landowners in Hammond.

60.     In October 2006, Davis, along with her then fellow Code Enforcement Officer, Timothy Tuttle, proposed a new law, Local Law # 4.  Local Law # 4 was voted on and passed by Defendants Putnam, Warren, Stout, Blanchard, and Coffin.

61.     Local Law # 4 articulates various requirements for the issuance of building permits.  It states that building permits are required for every "construction, enlargement, alteration, improvement, removal, relocation or demolition of any building or structure or any

portion thereof," with very limited exception.  Local Law # 4 requires that all building permit applications be accompanied by construction documents prepared by a state certified architect or engineer, as well as a certification that the structure will be in compliance with the Building Code.  Morristown's Code Enforcement Officer is charged with determining whether an application is sufficient and the decision of whether to grant or deny the building permit applications.

62.     Under New York Executive Law § 381(2), enforcement of the Building Code is optional.  Towns are given the option each year of enforcing the Building Code themselves or opting out and allowing the county in which the town is located to bear the responsibility and cost.

63.     Although its officials were aware of this option to opt out, Morristown chose not to do so.

64.     If Morristown had opted out of enforcing the Building Code, St. Lawrence County would be responsible for enforcing the Building Code.  In the past St. Lawrence County has worked to accommodate Amish religious practice relating to, for example, markings on horse-drawn buggies.

65.     Morristown officials, including Defendants, have freely chosen to take on the task of enforcing the Building Code.  Defendants have further chosen to initiate prosecutions of Plaintiffs in Morristown Town Court.  Nevertheless, Morristown officials, including Defendants, have complained publicly about the expense of enforcing Building Code provisions against the Amish.

**Defendants' Actions Against the Swartzentruber Amish**

66.     Since 2006, Defendants have given citations to thirteen Swartzentruber Amish residents of Morristown for building or moving a structure without a building permit.  The first to receive a citation was Plaintiff Andy Miller.  Andy Miller went to the Code Enforcement Officer's office in summer 2006 in order to apply for a building permit.  Upon requesting the application, Andy Miller was informed by Defendant Davis that his application would not be granted unless it was accompanied by construction documents prepared by a state certified architect and was in full compliance with the Building Code, which included the presence of smoke detectors in his residence.  Andy Miller was applying for a building permit for a "skidhouse"[2] that would have one and one half stories, and measure approximately 16 ft. by 28 ft.

67.     Approximately one month later, Davis showed up at Andy Miller's property for an inspection.  Soon thereafter, on or about July 20, 2006, Andy Miller received a citation in the mail for building without a permit.[3]  Defendants are prosecuting Andy Miller for this claimed violation in Morristown Town Court.

68.     The next to receive a citation was Plaintiff Sam Zook.  Prior to 2006, Sam Zook had applied for and received a building permit from Tuttle.  In January 2007, after that building permit had expired but before he had finished the construction, he received a Notice of Complaint issued by Davis.  Thereafter, on March 15, 2007, Sam Zook received a citation for

---

[2]  A "skidhouse" is an Amish term for a small house, usually no larger than one room, that a family lives in temporarily while they save enough money to build a larger home.

[3]     Andy Miller is the only Plaintiff who received a citation before the enactment of Local Law # 4.  Andy Miller's citation was issued pursuant to Local Law #1 of 1984.

building without a permit.  On April 28, 2007, Sam Zook submitted an application for a building permit to Davis, which she denied.  Defendants are prosecuting Sam Zook for this claimed violation in Morristown Town Court.

69.    The next to receive citations were Plaintiffs Menno Hershberger, Urie Hershberger, Menno Glick, and John Hershberger, all on May 10, 2007.  Urie Hershberger, Menno Glick and John Hershberger were all cited for building without a permit, and Menno Hershberger was cited for moving a structure without a permit.  Menno Hershberger received his citation as a result of an unannounced visit by Defendant Davis to his property on April 14, 2007, a Saturday.  That day, Menno Hershberger was moving a "skidhouse" on his property, when Defendant Davis unexpectedly appeared and issued him a Stop Work Order.  The date of the Stop Work Order was backdated to April 13, 2007, the preceding Friday.  Each of these Plaintiffs applied for a permit on April 28, 2007 and, in each case, Davis denied the application.  Thereafter, Davis issued citations to them for building without a permit, all on the same day (Menno Hershberger's alleged violation was for moving a skid house without a permit).  Defendants are prosecuting each of these Plaintiffs for these claimed violations in Morristown Town Court.

70.    The next to receive citations were Plaintiffs Levi Yoder and Jonas Zook, both on September 26, 2007 and both for building without a permit.  Prior to commencing construction, both Yoder and Jonas Zook spoke with Davis and were told that they would not receive building permits unless they strictly complied with the requirements of Local Law # 4 (which Davis knew was not possible, as many of that law's requirements run contrary to Plaintiffs' religious beliefs).  Defendants are prosecuting Yoder and Jonas Zook for these claimed violations in Morristown Town Court.

17

71.     The next to receive citations were Plaintiffs Mosie Swartzentruber and Dannie Swartzentruber, both on January 25, 2008 and both for building without a permit.  Mosie Swartzentruber applied for a building permit on November 10, 2007, but the application was denied by Davis.  Defendants are prosecuting Mosie Swartzentruber and Dannie Swartzentruber for these claimed violations in Morristown Town Court.

72.     Peter Swartzentruber was the next to receive a citation, also for building without a permit.  Peter Swartzentruber applied for a building permit in the summer of 2008, but his application was denied by Davis.  Peter Swartzentruber received a citation issued by Davis for building without a permit in September 2008.  Defendants are prosecuting Peter Swartzentruber for this claimed violation in Morristown Town Court.

73.     Upon information and belief, Amish landowners residing in other towns in St. Lawrence County have continued to build homes and receive permits without penalty or prosecution and without having to compromise their religious principles by, for example, submitting certified architectural drawings or installing smoke detectors in their homes.

**Defendants' Actions Have Put Local Law # 4 in Conflict with Plaintiffs' Sincerely Held Religious Beliefs**

74.     Because of the manner in which Defendants have enforced, and threaten to continue to enforce, Local Law # 4 against them, Plaintiffs are faced with the untenable "choice" of abandoning their faith, abandoning Morristown, or being prosecuted (which could result in substantial fines they cannot pay or incarceration).

75.     Local Law # 4  § 4(d)(5) requires that all building permit applications be accompanied by two (2) sets of construction documents prepared by a state certified architect or

18

engineer.  The acts of procuring such construction documents, and building a house in conformity with such documents, would violate the *Ordnung* and Plaintiffs' religious belief that they must maintain the simple ways approved by their forebears, avoiding any modern extravagances.  Plaintiffs use a building plan which originated in Ohio more than a century ago that complies with the *Ordnung* and has been passed down from generation to generation.

76.     Upon information and belief, Defendants are aware that Plaintiffs' religious beliefs prevent them from submitting architect-stamped construction plans, but they have nevertheless imposed a requirement for such plans.

77.     According to Local Law #4, the building permit application and the accompanying construction documents must substantiate that the proposed construction complies with the Building Code.

78.     Davis has represented to members of the Swartzentruber Amish community of Morristown on numerous occasions that Amish homes will not be Building Code-compliant unless: (1) battery-powered smoke detectors are installed; (2) the homes are equipped with "hurricane tie-downs," and (3) the foundations of their homes are "frost protected."

79.     Each of these three requirements violates the *Ordnung*.  First, the *Ordnung* requires that Plaintiffs not use electricity in their homes.  This prohibition includes most battery-operated devices.  Requiring the installation of smoke detectors in Swartzentruber Amish homes thus directly conflicts with Plaintiffs' ability to adhere to the religious mandate of the *Ordnung*.

80.     The Swartzentruber Amish also believe that they must rely on God, rather than man-made technologies, for their provision and protection.  Installing hurricane tie-downs would

violate Plaintiffs' belief that they must trust only in God, and not in man, to provide for their safety and welfare.

81.     Similarly, frost-protected foundations are, to the Swartzentruber Amish, a wasteful, unnecessary extravagance that not only induce pride but also symbolize an impermissible reliance upon man, rather than God, to ensure their health and safety.  Installing frost-protected foundations would therefore violate Plaintiffs' religious beliefs.

82.     Defendants' application of the Building Code and Local Law # 4 to Plaintiffs thus imposes a substantial burden on Plaintiffs' well-known religious practices.  The requirements dictated by Defendants are completely contrary to Plaintiffs' ability to live in or worship in a structure that was built in accordance with the *Ordnung*.

83.     Upon information and belief, Defendants have been and are aware that Plaintiffs' religious beliefs prevent them from installing battery-powered smoke detectors, hurricane tie-downs, or frost-protected foundations, but have imposed these requirements anyway.

84.     Defendants' enforcement of Local Law # 4 and the Building Code against Plaintiffs in the manner described above furthers no compelling governmental interest.  On the contrary, the same, or virtually identical, Code provisions were not enforced against the Swartzentruber Amish for years, including in Morristown and in neighboring towns in St. Lawrence County.  Such a sustained failure to protect a governmental interest demonstrates conclusively that the interest is not compelling.

85.    Upon information and belief, Defendants have never conducted a scientific or other study indicating, or made any factual determination concluding, that Amish homes are not as safe or safer than non-Amish homes.

86.    Nor have Defendants used the least restrictive means for furthering any claimed governmental interest.  Defendants can employ other, less restrictive, methods that do not violate the religious beliefs of Plaintiffs.

87.    For example, rather than requiring that architectural drawings be submitted with a building permit, the Code Enforcement Officer could interview a Swartzentruber Amish applicant about his building plans and confirm that the proposed structure will be constructed in the same manner as other Swartzentruber Amish structures in Morristown have been safely constructed for years.

88.    Upon information and belief, Defendants have never conducted a scientific or other study indicating, or made any factual determination concluding, that there is any way to meet their claimed interests by means less restrictive of Plaintiffs' religious exercise.

89.    Furthermore, upon information and belief, Davis is not enforcing certain provisions of Local Law # 4 and the Building Code as strictly against similarly situated non-Amish residents of Morristown as she is against Amish residents of Morristown.

90.    Upon information and belief, non-Amish residents of Morristown, even those with multiple code violations and confirmed hazardous conditions on their property, have not been required to appear in court and have not been threatened with jail time, so long as they have stated that they would remedy the violations.

21

91.     Upon information and belief, Davis performs discretionary inspections of the Swartzentruber Amish residents' property in hopes of finding violations, while she does not perform similar inspections of non-Amish residents' property or, does not perform them as frequently.

92.     AmishDeception.com (www.amishdeception.com) is a website that is dedicated to criticism of Swartzentruber Amish religion, culture and practices.   The website includes bulletin boards.

93.     Upon information and belief, Defendant Lanetta Kay Davis has visited and posted messages on the bulletin boards on AmishDeception.com as user kady123.

94.     On June 29, 2007, in response to a post by the website's administrator, user kady123 posted the following on the Amish Deception bulletin board:

"Dear Dave,

In one of your earlier posts you said, 'The bottom line is my people do not recognize your local government as the true authority.'

Since that seems to be true in this instance, do they recognize any other government body as having authority at all, i.e. state or federal?  A lot of people in this area have wondered out loud if a 'reservation' (like the Native American's have) might be a good solution for the Amish. Personally, I do not think that would be appropriate.  The Amish chose to move to the USA, where the Native Americans had no choice and lost their native land."

95.     On July 11, 2008, user kady123 posted a post entitled "You all are a blessing."

The text of the post stated:

> I would like to say how much I appreciate this website and all ex-Swartzentruber Amish that post here. It is refreshing to see such a wonderful group of people with genuine love and care for those still living in the Swartzentruber Amish culture.
>
> …
>
> In addition, you do it without bitterness and a hard-heart [sic] is truly a gift from God.  You all are a blessing to those of us that are ignorant of the Swartzentruber Amish culture.
>
> The LORD bless thee, and keep thee:
> The LORD make his face shine upon thee, and be gracious unto thee:
> The LORD lift up his countenance upon thee, and give thee peace.
>
> Numbers 6:24-26
>
> AMEN

96.     User kady123 has made other posts to the AmishDeception.com website.

97.     Upon information and belief, Davis has also actively monitored at least one website that is sympathetic to the Swartzentruber Amish.

98.     Upon information and belief, Defendant Davis has asked Code Enforcement Officers in nearby jurisdictions to take a hard line on code enforcement and issue citations to the Amish in their towns.  Davis's job duties do not include asking other Code Enforcement Officers to ticket the Amish living in their jurisdictions.

99.     Upon information and belief, every Amish pending building code case in St. Lawrence County, including the two cases pending in Hammond, result from Davis's actions.

100.     Government officials may not use their authority to discriminate against citizens with whom they have religious disagreements.

101.     The Town of Chautauqua, New York, had a conflict with Amish landowners several years ago regarding Building Code compliance.  That conflict was resolved through the grant of a variance which allowed the Amish to deviate from the Building Code.

102.     Defendants have made clear, however, that they will not support a variance and, instead, have chosen to prosecute the Amish in Morristown.

103.     Defendants wrote a letter to the State Legislature asking for help in dealing with their prosecution of the Plaintiffs.  Discussing this letter, one Town Council member characterized the prosecutions of the Plaintiffs as a "personal battle."

## CLAIMS FOR RELIEF

### COUNT I

**United States Constitution—Free Exercise Clause—Discrimination**

**42 U.S.C. § 1983 and 42 U.S.C. § 1985**

104.     Paragraphs 1 though 103 are incorporated by reference as if set forth fully herein.

105.     Defendants, through their laws and actions, have deprived, have conspired to deprive, and continue to deprive, Plaintiffs of their right to the free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by discriminating against Plaintiffs and targeting Plaintiffs for special disfavor.

106.    Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Plaintiffs have no adequate remedy at law for the harm and injury caused by Defendants' violation of their constitutional rights.

107.    Defendants have caused the Plaintiffs to suffer, and Plaintiffs continue to suffer irreparable harm and injury.  The Plaintiffs will continue to suffer such harm unless Defendants' actions are permanently enjoined.

## COUNT II

### United States Constitution—Free Exercise Clause—Neutrality

### 42 U.S.C. § 1983 and 42 U.S.C. § 1985

108.    Paragraphs 1 though 107 are incorporated by reference as if set forth fully herein.

109.    Defendants, through their laws and actions, have deprived, have conspired to deprive, and continue to deprive, Plaintiffs of their right to the free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by failing to treat Plaintiffs on neutral and equal terms with others who do not share Plaintiffs' religious beliefs.

110.    Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Plaintiffs have no adequate remedy at law for the harm and injury caused by Defendants' violation of their constitutional rights.

111.    Defendants have caused the Plaintiffs to suffer, and Plaintiffs continue to suffer irreparable harm and injury.  The Plaintiffs will continue to suffer such harm unless Defendants' actions are permanently enjoined.

## COUNT III

**United States Constitution—Free Exercise Clause—General Applicability**

**42 U.S.C. § 1983 and 42 U.S.C. § 1985**

112.    Paragraphs 1 though 111 are incorporated by reference as if set forth fully herein.

113.    Defendants, through their laws and actions, have deprived, have conspired to deprive, and continue to deprive, Plaintiffs of their right to the free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by burdening Plaintiffs' religious exercises under laws, policies and a pattern of enforcement that are not generally applicable.

114.    Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Plaintiffs have no adequate remedy at law for the harm and injury caused by Defendants' violation of their constitutional rights.

115.    Defendants have caused the Plaintiffs to suffer, and Plaintiffs continue to suffer irreparable harm and injury.  The Plaintiffs will continue to suffer such harm unless Defendants' actions are permanently enjoined.

## COUNT IV

**United States Constitution—Free Exercise Clause—Total Exclusion**

**42 U.S.C. § 1983 and 42 U.S.C. § 1985**

116.    Paragraphs 1 though 115 are incorporated by reference as if set forth fully herein.

117.    Defendants, through their laws and actions, have deprived, have conspired to deprive, and continue to deprive, Plaintiffs of their right to the free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the

26

States by the Fourteenth Amendment, by totally excluding Plaintiffs' religious exercise from Morristown.

118.    Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Plaintiffs have no adequate remedy at law for the harm and injury caused by Defendants' violation of their constitutional rights.

119.    Defendants have caused the Plaintiffs to suffer, and Plaintiffs continue to suffer irreparable harm and injury.  The Plaintiffs will continue to suffer such harm unless Defendants' actions are permanently enjoined.

### COUNT V

**United States Constitution—Free Exercise Clause—Individualized Exemptions**

**42 U.S.C. § 1983 and 42 U.S.C. § 1985**

120.    Paragraphs 1 though 119 are incorporated by reference as if set forth fully herein.

121.    Defendants, through their laws and actions, have deprived, have conspired to deprive, and continue to deprive, Plaintiffs of their right to the free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by substantially burdening Plaintiffs' religious exercise pursuant to a system of individualized exemptions.

122.    Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Plaintiffs have no adequate remedy at law for the harm and injury caused by Defendants' violation of their constitutional rights.

123.    Defendants have caused the Plaintiffs to suffer, and Plaintiffs continue to suffer irreparable harm and injury.  The Plaintiffs will continue to suffer such harm unless Defendants' actions are permanently enjoined.

## COUNT VI

### United States Constitution—Free Speech Clause—Discrimination

### 42 U.S.C. § 1983 and 42 U.S.C. § 1985

124.    Paragraphs 1 though 123 are incorporated by reference as if set forth fully herein.

125.    Defendants, through their laws and actions, have deprived, have conspired to deprive, and continue to deprive, Plaintiffs of their right to freedom of speech and expressive association, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by discriminating against Plaintiffs' expressive activity.

126.    Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Plaintiffs have no adequate remedy at law for the harm and injury caused by Defendants' violation of their constitutional rights.

127.    Defendants have caused the Plaintiffs to suffer, and Plaintiffs continue to suffer irreparable harm and injury.  The Plaintiffs will continue to suffer such harm unless Defendants' actions are permanently enjoined.

## COUNT VII

### United States Constitution—Free Speech Clause—Total Exclusion

### 42 U.S.C. § 1983 and 42 U.S.C. § 1985

128.    Paragraphs 1 though 127 are incorporated by reference as if set forth fully herein.

129.    Defendants, through their laws and actions, have deprived, have conspired to deprive, and continue to deprive, Plaintiffs of their right to freedom of speech and expressive association, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by totally excluding Plaintiffs' expressive activity from Morristown.

130.    Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Plaintiffs have no adequate remedy at law for the harm and injury caused by Defendants' violation of their constitutional rights.

131.    Defendants have caused the Plaintiffs to suffer, and Plaintiffs continue to suffer irreparable harm and injury.  The Plaintiffs will continue to suffer such harm unless Defendants' actions are permanently enjoined.

## COUNT VIII

### United States Constitution—Freedom of Association

### 42 U.S.C. § 1983 and 42 U.S.C. § 1985

132.    Paragraphs 1 though 131 are incorporated by reference as if set forth fully herein.

133.    Defendants, through their laws and actions, have deprived, have conspired to deprive, and continue to deprive, Plaintiffs of their right to freedom of association, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by intruding unduly upon the Plaintiffs' right to familial association and by intruding upon the Plaintiffs' right to associate for purposes of protected expressive activity.

29

134.    Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Plaintiffs have no adequate remedy at law for the harm and injury caused by Defendants' violation of their constitutional rights.

135.    Defendants have caused the Plaintiffs to suffer, and Plaintiffs continue to suffer irreparable harm and injury.  The Plaintiffs will continue to suffer such harm unless Defendants' actions are permanently enjoined.

## COUNT IX

### United States Constitution—Equal Protection Clause—Unequal Treatment

136.    Paragraphs 1 though 135 are incorporated by reference as if set forth fully herein.

137.    Defendants, through their laws and actions, have denied, conspired to deny, and continue to deny Plaintiffs equal protection of the laws, secured by the Fourteenth Amendment by applying their laws unequally to Plaintiffs and others on the basis of (1) religious status, (2) ethnicity, and (3) the exercise of fundamental First Amendment rights.

138.    Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Plaintiffs have no adequate remedy at law for the harm and injury caused by Defendants' violation of their constitutional rights.

139.    Defendants have caused the Plaintiffs to suffer, and Plaintiffs continue to suffer irreparable harm and injury.  The Plaintiffs will continue to suffer such harm unless Defendants' actions are permanently enjoined.

## COUNT X

### Fair Housing Act—Discrimination

### 42 U.S.C. § 3604(a)

140.     Paragraphs 1 though 139 are incorporated by reference as if set forth fully herein.

141.     Defendants, by denying Plaintiffs building permits and issuing them citations for building without permits, have discriminated against Plaintiffs by making residential housing in Morristown "unavailable" to them because of their religion, in violation of Section 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(a).

142.     Defendants' laws, policies and actions, as set forth herein, discriminate against the Plaintiffs based on religion, in violation of 42 U.S.C. § 3604 (a).

143.     Plaintiffs have been injured by Defendants' discriminatory actions as described above and are aggrieved persons as defined in 42 U.S.C. § 3602(i).  These persons have suffered damages as a result of Defendants' discriminatory conduct.  Plaintiffs are therefore entitled to relief under 42 U.S.C. § 3613(a).

## COUNT XI

### Religious Land Use and Institutionalized Persons Act—Substantial Burden

### 42 U.S.C. § 2000cc *et seq.*

144.     Paragraphs 1 though 143 are incorporated by reference as if set forth fully herein.

145.     Defendants' denial of building permits to Plaintiffs and issuance of citations to them constitutes the imposition or implementation of a "land use regulation" within the meaning of 42 U.S.C. § 2000cc (a)(1).

146.    Defendants' actions have substantially burdened Plaintiffs' religious exercise.

147.    That substantial burden affects, or removal of that substantial burden would affect, interstate commerce.

148.    That substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which Defendants make, or have in place formal or informal procedures or practices that permit Morristown to make, individualized assessments of the proposed uses for the property involved.

149.    Plaintiffs are therefore entitled to relief against this violation of RLUIPA under 42 U.S.C. § 2000cc-2.


## COUNT XII

### Religious Land Use and Institutionalized Persons Act—Discrimination

### 42 U.S.C. § 2000cc *et seq.*

150.    Paragraphs 1 though 149 are incorporated by reference as if set forth fully herein.

151.    Defendants' denial of building permits to Plaintiffs and issuance of citations to them constitutes the imposition or implementation of a "land use regulation" within the meaning of 42 U.S.C. § 2000cc (a)(1).

152.    Defendants' actions have discriminated against Plaintiffs on the basis of religion or religious denomination.

153.    Plaintiffs are therefore entitled to relief against this violation of RLUIPA under 42 U.S.C. § 2000cc-2.

## COUNT XIII

**Religious Land Use and Institutionalized Persons Act—Unreasonable Limitation**

**42 U.S.C. § 2000cc *et seq.***

154.   Paragraphs 1 though 153 are incorporated by reference as if set forth fully herein.

155.   Defendants' denial of building permits to Plaintiffs and issuance of citations to them constitutes the imposition or implementation of a "land use regulation" within the meaning of 42 U.S.C. § 2000cc (a)(1).

156.   Defendants' actions have unreasonably limited religious assemblies within Morristown.

157.   Plaintiffs are therefore entitled to relief against this violation of RLUIPA under 42 U.S.C. § 2000cc-2.

## COUNT XIV

**Religious Land Use and Institutionalized Persons Act—Total Exclusion**

**42 U.S.C. § 2000cc *et seq.***

158.   Paragraphs 1 though 157 are incorporated by reference as if set forth fully herein.

159.   Defendants' denial of building permits to Plaintiffs and issuance of citations to them constitutes the imposition or implementation of a "land use regulation" within the meaning of 42 U.S.C. § 2000cc (a)(1).

160.   Defendants' actions, unless enjoined, will totally exclude Swartentruber Amish religious assemblies within Morristown.

161.    Plaintiffs are therefore entitled to relief against this violation of RLUIPA under 42 U.S.C. § 2000cc-2.

## COUNT XV

### New York Constitution—Article I §§  8, 9 and 11
### Free Exercise, Free Speech, Freedom of Association, Equal Protection

162.    Paragraphs 1 though 161 are incorporated by reference as if set forth fully herein.

163.    Defendants, through their laws and actions, have deprived, have conspired to deprive, and continue to deprive, Plaintiffs of their rights to: (1) freedom of speech, as secured by Article I, Section 8, of the New York Constitution; (2) the right to assemble, as secured by Article I, Section 9, of the New York Constitution; and (3) equal protection of the laws and protection against discrimination, as secured by Article I, Section 11, of the New York Constitution.

164.    Plaintiffs have no adequate remedy at law for the harm and injury caused by Defendants' violation of their constitutional rights.  Defendants have caused the Plaintiffs to suffer, and Plaintiffs continue to suffer irreparable harm and injury.  The Plaintiffs will continue to suffer such harm unless Defendants' actions are permanently enjoined.

## COUNT XVI

### New York Constitution—Article I § 3
### Free Exercise of Religion

165.    Paragraphs 1 though 164 are incorporated by reference as if set forth fully herein.

166.    Defendants, through their laws and actions, have deprived, have conspired to deprive, and continue to deprive, Plaintiffs of their rights to the free exercise of religion, as secured by Article I, Section 3, of the New York Constitution.

34

167.     Plaintiffs have no adequate remedy at law for the harm and injury caused by Defendants' violation of their constitutional rights.  Defendants have caused the Plaintiffs to suffer, and Plaintiffs continue to suffer irreparable harm and injury.  The Plaintiffs will continue to suffer such harm unless Defendants' actions are permanently enjoined.

## COUNT XVII

### New York Civil Rights Law§ 40-c—Discrimination

168.     Paragraphs 1 though 167 are incorporated by reference as if set forth fully herein.

169.     The Defendants, by their acts, have conspired under color of law and continue to conspire to abridge the rights of Plaintiffs to be free from discriminatory applications and enforcement of their laws under Section 40-c of the New York Civil Rights Law.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs seek judgment against Defendants as follows:

A.     A permanent injunction enjoining the Defendants:

(1)     to issue building permits to Plaintiffs;

(2)     from enforcing Local Law # 4, the Building Code, or other laws, in a manner than substantially burdens the Plaintiffs' religious beliefs without a compelling government interest or by any means other than the least restrictive means to further such an interest;

(3)     from enforcing Local Law # 4, the Building Code, or other laws, in a discriminatory or selective manner against Plaintiffs or any other members of their distinctive religious, ethnic and linguistic minority group;

(4)     from imposing any other penalty on Plaintiffs for the exercise of their constitutionally and statutorily protected rights;

B.     Declaratory relief stating that: Defendants violated Plaintiffs' civil rights through the manner in which they have enforced their laws against Plaintiffs;

C.     Monetary damages in an amount to be determined at trial;

D.     An award to Plaintiffs of full costs and attorneys' fees arising out of this litigation, including without limitation any costs and attorneys' fees awardable under 42 U.S.C. § 1988; and

E.     Such other relief as may be just and proper.

## **DEMAND FOR JURY**

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by

jury in this action.

January 6, 2008                                     Respectfully submitted,

                                                        By:  _s/ Michael T. Mervis_
                                                              Michael T. Mervis

                                                  Michael T. Mervis Bar Number: 515353
                                                          Attorney for Plaintiffs
                                                          PROSKAUER ROSE LLP
                                                              1585 Broadway
                                                          New York, NY 10036
                                                              (212) 969 3000
                                                              (212) 969 2900


                                                  Jessica J. Kastner (not admitted in N.D.N.Y)
                                                  Jed W. Friedman (not admitted in N.D.N.Y)
                                                          PROSKAUER ROSE LLP
                                                              1585 Broadway
                                                          New York, NY 10036
                                                              (212) 969 3000
                                                              (212) 969 2900


                                                  Eric Rassbach (not admitted in N.D.N.Y)
                                                  Lori H. Windham (not admitted in N.D.N. Y.)
                                                          THE BECKET FUND FOR
                                                            RELIGIOUS LIBERTY
                                                      1350 Connecticut Avenue, N.W.
                                                                Suite 605
                                                          Washington, D.C.  20036
                                                              (202) 955-0095