UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

LEVI YODER, JONAS ZOOK, SAM ZOOK, JOHN L.
HERSHBERGER, MENNO S. HERSHBERGER, URIE
HERSHBERGER, MENNO L. GLICK, ANDY A. MILLER,
DANNIE L. SCHWARTZENTRUBER, MOSIE
SCHWARTZENTRUBER, PETER D. SCHWARTZENTRUBER,
BISHOP HARVEY MILLER, and BISHOP MOSE MILLER,

                                       **Plaintiffs,**        **Civil Case No.: 09-cv-0007**
                                                        **(TJM/GHL)**

           - against -

TOWN OF MORRISTOWN, LANETTA KAY DAVIS, in her
official capacity; FRANK L. PUTMAN, in his official capacity;
HOWARD WARREN, in his official capacity; DAVID STOUT, III,
in his official capacity; MARK BLANCHARD, in his official
capacity; CHRISTOPHER COFFIN, in his official capacity; and
GARY TURNER, in his official capacity,

                                         **Defendants.**

---

## DEFENDANT TOWN OF MORRISTOWN'S MEMORANDUM OF LAW
## IN REPLY TO PLAINTIFFS' OPPOSITION AND IN FURTHER SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS PURSUANT
## TO FRCP 12(c)

---

Gregg T. Johnson, Esq. (506443)
Jacinda H. Conboy, Esq. (105383)

LEMIRE JOHNSON, LLC
Attorneys for Defendants
2534 Route 9 - P.O. Box 2485
Malta, New York 12020
518-899-5700

Dockets.Justia.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................. 1

POINT I
PLAINTIFFS' ALLEGATIONS IN THE COMPLAINT CHALLENGE
THE CONSTITUTIONALITY OF THE NYS UNIFORM CODE ................. 2

    A.    Architect Stamped Plans are Required Pursuant to the NYS
             Uniform Code, Education Law and New York State Code of
             Rules and Regulations ..................................... 3

    B.    Hurricane Tie Downs are a Requirement of the NYS
             Uniform Code ............................................ 4

    C.    Smoke Detectors are a Requirement of the NYS
             Uniform Code ............................................ 4

    D.    Frost Protected Foundations are a Requirement of the NYS
             Uniform Code ............................................ 5

POINT II
IN THE ALTERNATIVE, DEFENDANTS SEEK DISMISSAL OF THOSE
PORTIONS OF THE COMPLAINT THAT ALLEGE A CONSTITUTIONAL
CHALLENGE TO THE NYS UNIFORM CODE ........................... 6

CONCLUSION ......................................................... 7

## TABLE OF AUTHORITIES

### Federal Case Law

*Patel v. Contemporary Classics of Beverly Hills,*
259 F.3d 123 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . n.1

### Federal Statutes

*Fed. R. Civ. P.* 12(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . n.1

*Fed. R. Civ. P.* 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, n.1

*Fed. R. Civ. P.* 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Fed. R. Civ. P.* 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### New York State Statutes, Codes and Regulations

*NYS Educ. L.* §7209 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, n.5

*NYS Educ. L.* §7307 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, n.5

19 NYCRR §1203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*International Code Council & New York State,*
*Residential Code of New York State,* R. 105.1, 2 (2007 Ed. 2007) . . . . . . . . . . . . . . . . . . 3, n. 4

*International Code Council & New York State,*
*Residential Code of New York State,* R. 313.1(f)(2007 Ed. 2007) . . . . . . . . . . . . . . . . . . . . 4

*International Code Council & New York State,*
*Residential Code of New York State,* R. 403.1.6 (2007 Ed. 2007) . . . . . . . . . . . . . . . . . . . . 4

*International Code Council & New York State,*
*Residential Code of New York State,* R. 403.3(2007 Ed. 2007) . . . . . . . . . . . . . . . . . . . . . . 5

*International Code Council & New York State,*
*Residential Code of New York State,* R. 602.10.1.1 (2007 Ed. 2007) . . . . . . . . . . . . . . . . . . 4

*International Code Council & New York State,*
*Residential Code of New York State,* R. 602.10.3 (2007 Ed. 2007) . . . . . . . . . . . . . . . . . . . 4

*International Code Council & New York State,*
*Residential Code of New York State,* R. 802.11 (2007 Ed. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 4

*International Code Council & New York State,*
*Residential Code of New York State,* R. 403.3(2007 Ed. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

## PRELIMINARY STATEMENT

Defendant, the Town of Morristown (hereinafter "Town" or "Morristown"), by and through its attorneys, Lemire Johnson, LLC, submit this Memorandum of Law in reply to Plaintiff's opposition and in further support of its motion to dismiss the Complaint pursuant to FRCP 12 ( c )[1] and FRCP 19 due to Plaintiffs' failure to join indispensable parties, (St. Lawrence County and an appropriate New York State official), or in the alternative, requests an order compelling to joinder of St. Lawrence County[2] and the appropriate New York State official[3] pursuant to FRCP 19 or 20.

Plaintiffs claim that Defendants have not properly compiled with Rule 7.1(a)(4) by not attaching a proposed amended answer or third party Complaint is misplaced as Defendant is seeking dismissal of the Complaint, or an Order compelling *Plaintiffs* to join St. Lawrence County and/or New York State as proper parties. While it would seem illogical for Defendants to draft Plaintiffs' Amended Complaint, if the Court so directs, Defendants do not seek to add any additional allegations to the Complaint but merely to add St. Lawrence County and the appropriate New York State official as necessary Defendants. To the extent that such motion is granted, Defendants

---

[1] To the extent that Plaintiffs' claim that the motion is untimely pursuant to *FRCP* 12(b)(7), the motion is made pursuant to 12 (c). *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)(a motion made pursuant to 12(b) after the pleadings are closed should be construed as a motion under 12(c)).

[2] Although Plaintiffs claim in their opposition that enforcement of the NYS Uniform Code by St. Lawrence County and/or the State, their Complaint references the fact that St. Lawrence County could be in the positions of enforcing the NYS Uniform Code. (Compl. ¶¶ 63-64) As such Plaintiffs admit by their Complaint that there are questions of law that are common to the rights and duties of St. Lawrence County arising out of the series of transactions or occurrences at issue in this action.

[3] Specifically, the Director of the New York State Department of Code Enforcement and Administration.

-1-

concede that the proper party to be named is Ronald Piester AIA, Director, New York State Department of State, Division of Code Enforcement and Administration.

Defendants have timely filed their motion in compliance with the Court's Amended Scheduling Order (Dkt. No. 37) and further, sought and obtained permission to do so from Magistrate Judge Lowe (See Text Order 12/29/09).

## POINT I

### PLAINTIFFS' ALLEGATIONS IN THE COMPLAINT CHALLENGE THE CONSTITUTIONALITY OF THE NYS UNIFORM CODE

While Plaintiffs now, for the first time, retreat from their Complaint and argue that they are only contesting the Defendant's manner of enforcing Local Law #4 and not the State Building Code, the allegations in their Complaint plainly state otherwise. Plaintiffs have crafted their Complaint to include extensive allegations that the Local Law #4 and NYS Uniform Code violate their religious beliefs and the consequences of the enforcement of the State Code (Compl. ¶¶ 3-4, 5-11, 13-15, 39-55, 56-65, 67-88, 101-102). While Plaintiffs have also included a selective enforcement (or disparate treatment) claim, such claim is secondary to their claim that the NYS Uniform Code violates their religious beliefs and/or constitutional rights (Compl. ¶ 3-4 , 5-11). Plaintiffs clearly and specifically allege in their Complaint that the requirements that they obtain architect-stamped plans, install battery powered smoke detectors, install building hurricane tie downs and install frost protected foundations violate their constitutional rights. In fact, those are the central and specific and unqualified allegations underlying each and every one of Plaintiffs' claims. It is beyond dispute that each and every one of these "requirements" (from smoke detectors to foundations) come from

-2-

the NYS Uniform Code and/or NYS State Statute (not any Town legislation or initiative)[4].

**A.    Architect Stamped Plans are Required Pursuant to the NYS Uniform Code, Education Law and New York State Code of Rules and Regulations.**

Plaintiff's allege in the Complaint that: *Local Law #4 §4(d)(5) requires that all building permit applications be accompanied by two (2) sets of construction documents prepared by state certified architect or engineer. The acts of procuring such construction documents, and building a house in conformity with such documents, would violate the Ordnung and Plaintiffs' religious belief that they must maintain the simple ways approved by their forbears, avoiding any modern extravagances.*" (Compl. ¶75). The requirement of obtaining architect and/or engineered plans is undisputably required pursuant to 19 NYCRR §1203.3 which provides:

> Construction documents shall not be accepted as part of an application for a building permit unless such documents:
>
> (a) are prepared by a New York State registered architect or licensed professional engineer where so required by the Education Law;

*Education Law* §7307 and §7209 require stamped plans and prohibits municipalities from accepting or approving plans that are not stamped.[5] Rule 105.1 of the NYS Uniform Code further provides that the administration and enforcement of the NYS Uniform Code shall be in compliance with 19 NYCRR §1203. Thus, Plaintiffs' claim that obtaining stamped plans violates their constitutional rights is on its face a challenge to the NYS Uniform Code.

_____

[4]In fact, the Defendant is prohibited by the NYS Uniform Code from "waiving, modifying or otherwise altering any provision of the Code" as set forth in *NYS Res. Code* R.105.2.

[5] Subject to the exclusions set forth in §§7209 & 7307 which with respect to residences includes an exclusion for buildings with a gross floor area of fifteen hundred square feet or less.

**B.      Hurricane Tie Downs Are A Requirement of the NYS Uniform Code.**

Plaintiff's Complaint states: "*Davis has represented to members of the Swartzentruber Amish community of Morristown on numerous occasions that Amish homes will not be Building Code - compliant unless: ...(2) the homes are equipped with "hurricane tie-downs"...*" (Compl. ¶78). Plaintiffs go on to alleged that: "*Each of these requirements violates the Ordnung*" (Compl. ¶79). The NYS Uniform Code requires both foundation anchorage, wall bracing as well as roof tie-down or "uplift resistance." (*International Code Council & New York State, Residential Code of New York State,* (2007 Ed. 2007)(hereinafter *NYS Res. Code,* RR 403.1.6, RR602.10.1.1, RR 602.10.3, RR 802.11)[6]. The NYS Uniform Code provides the specifications by which the above-stated items are to be accomplished and the Defendant is obligated to comply with the NYS Uniform Code. Plaintiffs' allegation that such violates their constitutional rights is plainly a challenge to the NYS Uniform Code.

**C.      Smoke Detectors Are A Requirement of the NYS Uniform Code.**

Plaintiffs' Complaint states: "*Davis has represented to members of the Swartzentruber Amish community of Morristown on numerous occasions that Amish homes will not be Building Code - compliant unless: (1) battery-powered smoke detectors are installed....*" (Compl. ¶78). Plaintiffs go on to allege that "*Each of these requirements violates the Ordnung*" (Compl. ¶79). The NYS Uniform Code provides the locations and manner in which smoke alarms are to be installed in residential dwellings (*NYS Res. Code* RR 313.1(f)). Again, this is a requirement proscribed by the NYS Uniform Code which Plaintiffs claim such requirement violates their constitutional rights. Once again, Plaintiffs' claim is a challenge to the NYS Uniform Code.

---

[6]For the Court's convenience, the applicable portions of the Code are annexed hereto.

**D.      Frost Protected Foundations Are A Requirement of the NYS Uniform Code.**

Plaintiffs' Complaint states: "*Davis has represented to members of the Swartzentruber Amish community of Morristown on numerous occasions that Amish homes will not be Building Code - compliant unless: ...(3) the foundations of their homes are "frost-protected.*" (Compl. ¶78). Plaintiffs go on to allege that "*Each of these requirements violates the Ordnung.*" (Compl. ¶79) With respect to frost protected foundations Section 403.3 of the NYS Uniform Code provides the requirements for frost protected home by location based on a air freezing index for locations identified by "Station" with in the State of New York. (*NYS Res. Code* RR 403.3) Thus, Plaintiff's Complaint on its face challenges the constitutionality of the NYS Uniform Building Code. Notably, Plaintiffs have not and cannot allege that any of the Building Code restrictions they challenge were the product of any Town legislation or Town initiative.

While Plaintiffs allegedly now argue that their Complaint does not facially challenge the constitutionality of the NYS Uniform Building Code, but rather, challenges the Town's selective enforcement of the same. While there are a small number of allegations that advance a selective enforcement claim, a plain ready of Plaintiffs' Complaint makes clear that any attempt by the Town to enforce the NYS Uniform Building Code would result in an alleged violation of Plaintiffs' constitutional rights. Thus, the Complaint on its face challenges the constitutionality of the NYS Uniform Code as any enforcement of the Uniform Code with respect to any of the above stated provisions would allegedly violate Plaintiffs' religious beliefs. The only alternative for the Town would be to not enforce the NYS Uniform Code, *i.e.* selectively enforce the Uniform Code with respect to the non-Amish, something that the Town has not done and does not legally have the right to do.

In fact, only eleven (Compl. ¶¶3-4, 12, 66, 89-91, 98-100, 103) of the first 103 allegations (Compl. ¶¶1-103) in the Complaint specifically advance the secondary "selective treatment" claim which Plaintiffs now attempt to emphasize. As the Court can plainly see, the primary, more extensive allegations in the Complaint (Compl. ¶¶ 3-5, 11, 13-15, 39-65, 67-88, 101-102) are based upon a challenge to the NYS Code and the specific building requirements promulgated in the NYS Code. Furthermore, the only specific allegations of injury to the Plaintiff all relate to the application of the NYS Uniform Code and the Complaint fails to allege that any non-Amish individuals were treated differently (Compl. ¶¶18-28).

Plaintiffs' arguments that Defendant's motion is "speculative" is disingenuous at best. By Plaintiffs' own allegations, Plaintiffs have acknowledged the County's contingent enforcement rule. Specifically, *"If Morristown had opted out of enforcing the Building Code, St. Lawrence County would be responsible for enforcing the Building Code."* (Compl. ¶64).

## POINT II

### IN THE ALTERNATIVE, DEFENDANTS SEEK DISMISSAL OF THOSE PORTIONS OF THE COMPLAINT THAT ALLEGE A CONSTITUTIONAL CHALLENGE TO THE NYS UNIFORM CODE

To the extent that the Court is not inclined to dismiss the Complaint or compel the joinder of appropriate New York State officials and St. Lawrence County, based upon Plaintiffs' repeated representations in their motion papers that Defendant has misunderstood or misconstrued the Complaint and state that Plaintiffs only seek to make a selective enforcement claim against the Defendant, Plaintiffs should be limited to a selective enforcement claim alone. As such Plaintiffs first, fourth, fifth, seventh, eighth, eleventh, twelfth, thirteenth, fourteenth and sixteenth causes of

action should be dismissed in their entirety and Plaintiffs' remaining causes of action should be dismissed to the extent they advance anything other than a selective treatment theory.

## CONCLUSION

Defendants respectfully submit that the State of New York and St. Lawrence County are indispensable parties and Plaintiffs' failure to join such parties warrants dismissal of the Complaint. Alternatively, Defendants respectfully submit that the State of New York and St. Lawrence County are indispensable and/or necessary parties and respectfully request an Order directing Plaintiffs to add the State of New York and St. Lawrence County as parties or in the alternative an Order dismissing Plaintiffs' first, fourth, fifth, seventh, eighth, eleventh, twelfth, thirteenth, fourteenth and sixteenth causes of action and Plaintiffs' remaining causes of action should be dismissed to the extent they advance anything other than a selective treatment theory.

Dated: Malta, New York
      February 25, 2010

                  LEMIRE JOHNSON, LLC

                  By: _____
                      Gregg T. Johnson, Esq. (506443)
                      Jacinda H. Conboy, Esq. (105383)

# SECTION R105 ADMINISTRATION AND ENFORCEMENT

**R105.1 Administration and enforcement.** Administration and enforcement of the New York State Uniform Fire Prevention and Building Code shall be in accordance with local law, subject to the minimum requirements set forth in the "Official Compilation of Codes Rules and Regulations of the State of New York," 19 NYCRR Part 1203, "Minimum Standards for Administration and Enforcement." State agencies shall comply with the minimum requirements set forth in 19 NYCRR Part 1204, "Administration and Enforcement by State Agencies."

Case 7:09-cv-00007-NPM-GHL   Document 48   Filed 02/25/10   Page 13 of 24

**R105.2 Modification.** No town, village, city or county, nor any state agency charged with the administration and enforcement of this code may waive, modify or otherwise alter any provision of this code unless approved by the State Fire Prevention and Building Code Council in accordance with Section 379 of Article 18 of the Executive Law.



- STATE INFORMATION
- [ 2007 Residential Code of New York State ]
  - Chapter 4 - Foundations
    - SECTION R401 GENERAL
    - SECTION R402 MATERIALS
    - SECTION R403 FOOTINGS
    - SECTION R404 FOUNDATION WALLS
    - SECTION R405 FOUNDATION DRAINAGE
    - SECTION R406 FOUNDATION WATERPROOFING AND DAMPPROOFING
    - SECTION R407 COLUMNS
    - SECTION R408 UNDER-FLOOR SPACE

R403.1 General.
R403.2 Footings for wood foundations.
R403.3 Frost protected shallow foundations.
Top Previous Section Next Section

**R403.3 Frost protected shallow foundations.** For buildings where the monthly mean temperature of the building is maintained at a minimum of 64°F (18°C), footings are not required to extend below the frost line when protected from frost by insulation in accordance with Figure R403.3(1) and Table R403.3. Foundations protected from frost in accordance with Figure R403.3(1) and Table R403.3 shall not be used for unheated spaces such as porches, utility rooms, garages and carports, and shall not be attached to basements or crawl spaces that are not maintained at a minimum monthly mean temperature of 64°F (18°C).

Materials used below grade for the purpose of insulating footings against frost shall be labeled as complying with ASTM C 578.





For SI: 1 inch = 25.4 mm.
a. See Table R403.3 for required dimensions and R-values for vertical and horizontal insulation.

**FIGURE R403.3(1) INSULATION PLACEMENT FOR FROST-PROTECTED FOOTINGS IN HEATED BUILDINGS**

## INSULATION DETAIL



FLASHING PER SECTION R703.8

INSULATION PROTECTION PER SECTION SECTION R403.3.2

FINISH GRADE OR CONCRETE
SLAB OF ADJACENT UNHEATED
SLAB-ON-GROUND STRUCTURE

12" MAX.

12" MIN.

BEAM LINTEL OR CANTILEVER
TO CARRY LOAD OVER
NON LOAD-BEARING
INSULATION

CONCRETE MASONRY OR
PERMANENT WOOD
FOUNDATION GRADE BEAM
OR WALL OF ADJACENT
UNHEATED STRUCTURE

FOOTING AS REQUIRED

FROST PROTECT
FOUNDATION SLA
FLOOR PER SECT

NOMINAL 4 IN. SCREEN AND
WASHED GRAVEL OR CRUS
DRAINED PER SECTION R40

VERTICAL WALL INSULATION

HORIZONTAL INSULATION³

## HORIZONTAL INSULATION PLAN



FOUNDATION PERIMETER

HEATED BUILDING AREA

ATTACHED SLAB
FOUNDATION OF UNHEATED
SLAB-ON-GROUND
STRUCTURE PER
SECTION R403.1
AND R403.2

B

A

For SI: 1 inch = 25.4 mm.
a. See Table R403.3 for required dimensions and R-values for vertical and horizontal insulation.

## FIGURE R403.3(3) INSULATION PLACEMENT FOR FROST-PROTECTED FOOTINGS ADJACENT TO UNHEATED SLAB-ON-GROUND STRUCTURE



## FIGURE R403.3(4) INSULATION PLACEMENT FOR FROST-PROTECTED FOOTINGS ADJACENT TO HEATED STRUCTURE

## TABLE R403.3 MINIMUM INSULATION REQUIREMENTS FOR FROST-PROTECTED FOOTINGS IN HEATED BUILDINGS[a]

| AIR FREEZING INDEX (°F-days)[b] | VERTICAL INSULATION R-VALUE[c,d] | HORIZONTAL INSULATION R-VALUE[c,e] | | HORIZONTAL INSULATION DIMENSIONS PER FIGURE R403.3(1) (inches) | | |
|---|---|---|---|---|---|---|
| | | Along walls | At corners | A | B | C |
| 1,500 or less | 4.5 | Not required | Not required | Not required | Not required | Not r |
| 2,000 | 5.6 | Not required | Not required | Not required | Not required | Not r |
| 2,500 | 6.7 | 1.7 | 4.9 | 12 | 24 | 40 |
| 3,000 | 7.8 | 6.5 | 8.6 | 12 | 24 | 40 |
| 3,500 | 9.0 | 8.0 | 11.2 | 24 | 30 | 60 |
| 4,000 | 10.1 | 10.5 | 13.1 | 24 | 36 | 60 |

a. Insulation requirements are for protection against frost damage in heated buildings. Greater values may be required to meet energy conservation standards. Interpolation between values is permissible.
b. See Table R403.3(1) for Air Freezing Index values.

c. Insulation materials shall provide the stated minimum R-values under long-term exposure to moist, below-ground conditions in freezing climates. The following R-values shall be used to determine insulation thicknesses required for this application: Type II expanded polystyrene—2.4R per inch; Type IV extruded polystyrene—4.5R per inch; Type VI extruded polystyrene—4.5R per inch; Type IX expanded polystyrene—3.2R per inch; Type X extruded polystyrene—4.5R per inch.

d. Vertical insulation shall be expanded polystyrene insulation or extruded polystyrene insulation.

e. Horizontal insulation shall be extruded polystyrene insulation.

## TABLE R403.3(1) AIR FREEZING INDEX (BASE 32° FAHRENHEIT) RETURN PERIOD OF 100 YEAR (99% probability)

| Station Name | Station Number | Air Freezing Index | Station Name | Station Nu |
|---|---|---|---|---|
| ALBANY WSO | 300042 | 1350 | LIBERTY | 304731 |
| ALCOVE DAM | 300063 | 1451 | LITTLE FALLS CITY RES | 304791 |
| ALFRED | 300085 | 1499 | LITTLE VALLEY | 304808 |
| ALLEGANY STATE PARK | 300093 | 1494 | LOCKPORT 2 NE | 304844 |
| ANGELICA | 300183 | 1421 | LOWVILLE | 304912 |
| BAINBRIDGE | 300360 | 1349 | MILLBROOK | 305334 |
| BATAVIA | 300443 | 1310 | MINEOLA | 305377 |
| BOONVILLE 2 SSW | 300785 | 1963 | MOHONK LAKE | 305426 |
| BRIDGEHAMPTON | 300889 | 510 | MOUNT MORRIS 2 W | 305597 |
| BROCKPORT 2 NW | 300937 | 1195 | NEW YORK CNTRL PK WSO | 305801 |
| CANANDAIGUA 3 S | 301152 | 1185 | NY WESTERLEIGH STAT IS | 305821 |
| CANTON 4 SE | 301185 | 2124 | NORWICH 1 NE | 306085 |
| CARMEL 1 SW | 301207 | 1093 | OGDENSBURG 3 NE | 306164 |
| CHASM FALLS | 301387 | 1952 | OSWEGO EAST // | 306314 |
| CHAZY | 301401 | 1997 | PATCHOGUE 2 N | 306441 |
| COOPERSTOWN | 301752 | 1454 | PENN YAN 2 SW | 306510 |
| CORTLAND | 301799 | 1396 | PERU 2 WSW | 306538 |
| DANNEMORA | 301966 | 1794 | PORT JERVIS | 306774 |
| DANSVILLE | 301974 | 1230 | POUGHKEEPSIE FAA AP | 306820 |
| DOBBS FERRY | 302129 | 576 | RIVERHEAD RESEARCH | 307134 |
| ELIZABETHTOWN | 302554 | 2078 | ROCHESTER WSO // | 307167 |
| ELMIRA | 302610 | 1361 | SALEM | 307405 |
| FRANKLINVILLE | 303025 | 1715 | SCARSDALE | 307497 |
| FREDONIA | 303033 | 1143 | SETAUKET | 307633 |
| GENEVA RESEARCH FARM | 303184 | 1297 | SODUS CENTER // | 307842 |
| GLENHAM | 303259 | 985 | SPENCER 3 W | 308088 |
| GLENS FALLS FAA AP | 303294 | 1688 | STILLWATER RESERVOIR | 308248 |
| GLOVERSVILLE | 303319 | 1500 | SYRACUSE WSO | 308383 |
| GOUVERNEUR | 303346 | 1877 | TUPPER LAKE SUNMOUNT | 308631 |
| GRAFTON | 303360 | 1516 | UTICA FAA AP | 308737 |

| HEMLOCK | 303773 | 1436 | WANAKENA RANGER SCHOOL// | 308944 |
| INDIAN LAKE 2 SW | 304102 | 2317 | WATERTOWN | 309000 |
| ITHACA CORNELL UNIV. // | 304174 | 1367 | WESTFIELD 3 SW | 309189 |
| LAKE PLACID CLUB | 304555 | 2318 | WEST POINT | 309292 |
| LAWRENCEVILLE | 304647 | 1956 | WHITEHALL | 309389 |

Top Previous Section Next Section

COPYRIGHT 2007 by INTERNATIONAL CODE COUNCIL, powered by citation®

## SECTION R313 SMOKE ALARMS, AUTOMATIC SPRINKLER SYSTEMS AND CARBON MONOXIDE ALARMS

**R313.1 Smoke alarms.** Smoke alarms shall be installed in the following locations: [F]

1.   In each sleeping room.

2.   Outside each separate sleeping area in the immediate vicinity of the bedrooms.

3.   On each additional story of the dwelling, including basements but not including crawl spaces and uninhabitable attics. In dwellings or dwelling units with split levels and without an intervening door between the adjacent levels, a smoke alarm installed on the upper level shall suffice for the adjacent lower level provided that the lower level is less than one full story below the upper level.

When more than one smoke alarm is required to be installed within an individual dwelling unit the alarm devices shall be interconnected in such a manner that the actuation of one alarm will activate all of the alarms in the individual unit. The alarm shall be clearly audible in all bedrooms over background noise levels with all intervening doors closed.

**Exception:** Interconnection is not required where smoke alarms are permitted to be battery operated in accordance with Section R313.1.2.

All smoke alarms shall be listed and installed in accordance with the provisions of this code and the household fire warning equipment provisions of NFPA 72.

**R602.10.1.1 Spacing.** Spacing of braced wall lines shall not exceed 35 feet (10,668 mm) on center in both the longitudinal and transverse directions in each story.

**Exception:** Spacing of braced wall lines not exceeding 50 feet shall be permitted where:

1.   The wall bracing provided equals or exceeds the amount of bracing required by Table R602.10.1 multiplied by a factor equal to the braced wall line spacing divided by 35 feet, and

2.   The length-to-width ratio for the floor/wall diaphragm does not exceed 3:1.

**R602.10.3 Braced wall panel construction methods.** The construction of braced wall panels shall be in accordance with one of the following methods:

1. Nominal 1-inch-by-4-inch (25.4 mm by 102 mm) continuous diagonal braces let in to the top and bottom plates and the intervening studs or approved metal strap devices installed in accordance with the manufacturer's specifications. The let-in bracing shall be placed at an angle not more than 60 degrees (1.06 rad) or less than 45 degrees (0.79 rad) from the horizontal.

2. Wood boards of $^5/_8$ inch (15.9 mm) net minimum thickness applied diagonally on studs spaced a maximum of 24 inches (610 mm). Diagonal boards shall be attached to studs in accordance with Table R602.3(1).

3. Wood structural panel sheathing with a thickness not less than $^5/_{16}$ inch (7.9 mm) for 16-inch (406 mm) stud spacing and not less than $^3/_8$ inch (9.5 mm) for 24-inch (610 mm) stud spacing. Wood structural panels shall be installed in accordance with Table R602.3(3).

4. One-half-inch (12.7 mm) or $^{25}/_{32}$-inch (19.8 mm) thick structural fiberboard sheathing applied vertically or horizontally on studs spaced a maximum of 16 inches (406 mm) on center. Structural fiberboard sheathing shall be installed in accordance with Table R602.3 (1).

5. Gypsum board with minimum $^1/_2$-inch (12.7 mm) thickness placed on studs spaced a maximum of 24 inches (610 mm) on center and fastened at 7 inches (178 mm) on center with the size nails specified in Table R602.3(1) for sheathing and Table R702.3.5 for interior gypsum board.

6. Particleboard wall sheathing panels installed in accordance with Table R602.3(4)

7. Portland cement plaster on studs spaced a maximum of 16 inches (406 mm) on center and installed in accordance with Section R703.6.

8. Hardboard panel siding when installed in accordance with Table R703.4.

**Exception:** Alternate braced wall panels constructed in accordance with Section R602.10.6 shall be permitted to replace any of the above methods of braced wall panels.

**R802.11 Roof tie-down.**

## TABLE R802.11 REQUIRED STRENGTH OF TRUSS OR RAFTER CONNECTIONS TO RESIST WIND UPLIFT FORCES[a,b,c,e,f] (Pounds per connection)

| BASIC WIND SPEED (3–second gust) | ROOF SPAN (feet) | | | | | | | OVERHANGS[d] (pounds/feet) |
|---|---|---|---|---|---|---|---|---|
| | 12 | 20 | 24 | 28 | 32 | 36 | 40 | |
| 85 | -72 | -120 | -145 | -169 | -193 | -217 | -241 | -38.55 |
| 90 | -91 | -151 | -181 | -212 | -242 | -272 | -302 | -43.22 |
| 100 | -131 | -218 | -262 | -305 | -349 | -393 | -436 | -53.36 |
| 110 | -175 | -292 | -351 | -409 | -467 | -526 | -584 | -64.56 |

For SI: 1 inch = 25.4 mm, 1 foot = 305 mm, 1 mph = 1.61 km/hr, 1 pound/foot = 14.5939 N/m, 1 pound = 0.454 kg.

a. The uplift connection requirements are based on a 30 foot mean roof height located in Exposure B. For Exposures C and D and for other mean roof heights, multiply the above loads by the Adjustment Coefficients in Table R-301.2(3).

b. The uplift connection requirements are based on the framing being spaced 24 inches on center. Multiply by 0.67 for framing spaced 16 inches on center and multiply by 0.5 for framing spaced 12 inches on center.

c. The uplift connection requirements include an allowance for 10 pounds of dead load.

d. The uplift connection requirements do not account for the effects of overhangs. The magnitude of the above loads shall be increased by adding the overhang loads found in the table. The overhang loads are also based on framing spaced 24 inches on center. The overhang loads given shall be multiplied by the overhang projection and added to the roof uplift value in the table.

e. The uplift connection requirements are based upon wind loading on end zones as defined in Section M1609.6 of the *Building Code of New York State*. Connection loads for connections located a distance of 20% of the least horizontal dimension of the building from the corner of the building are permitted to be reduced by multiplying the table connection value by 0.7 and multiplying the overhang load by 0.8.

f. For wall-to-wall and wall-to-foundation connections, the capacity of the uplift connector is permitted to be reduced by 100 pounds for each full wall above. (For example, if a 600-pound rated connector is used on the roof framing, a 500-pound rated connector is permitted at the next floor level down.)

**R403.1.6 Foundation anchorage.** When braced wall panels are supported directly on continuous foundations, the wall wood sill plate or cold-formed steel bottom track shall be anchored to the foundation in accordance with this section.

The wood sole plate at exterior walls on monolithic slabs and wood sill plate shall be anchored to the foundation with anchor bolts spaced a maximum of 6 feet (1829 mm) on center. There shall be a minimum of two bolts per plate section with one bolt located not more than 12 inches (305 mm) or less than seven bolt diameters from each end of the plate section. In Seismic Design Categories $D_1$ and $D_2$, anchor bolts shall also be spaced at 6 feet (1829 mm) on center and located within 12 inches (305 mm) from the ends of each plate section at interior braced wall lines when required by Section R602.10.9 to be supported on a continuous foundation. Bolts shall be at least $^1/_2$ inch (12.7 mm) in diameter and shall extend a minimum of 7 inches (178 mm) into masonry or concrete. Interior bearing wall sole plates on monolithic slab foundations shall be positively anchored with approved fasteners. A nut and washer shall be tightened on each bolt to the plate. Sills and sole plates shall be protected against decay and termites where required by Sections R319 and R320. Cold-formed steel framing systems shall be fastened to the wood sill plates or anchored directly to the foundation as required in Section R505.3.1 or R603.1.1.

**Exception:** Foundation anchor straps, spaced as required to provide equivalent anchorage to $^1/_2$-inch-diameter (12.7 mm) anchor bolts.